SHALL v. GORDON

---

(June 21, 1926. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Appeal—Par. 625, 630.**

The judgment of a trial court upon a question of fact will be reversed when it appears to this court manifestly erroneous.

Appeal from First City Court. Hon. W. Alexander Bahns, Judge.

Action by H. M. Shall against Robert Gordon.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Ed. J. De Verges, of New Orleans, attorney for plaintiff, appellant.

John Wagner and J. C. O'Connor, of New Orleans, attorneys for defendant, appellee.

CLAIBORNE, J. Plaintiff claims $113.10 as the price of milk sold and delivered to No. 826 Carrollton avenue from March 25, 1923, to April 6, 1924, at the rate of one quart per day.

The answer is a general denial.

There was judgment in favor of defendant dismissing plaintiff's demand as in case of non-suit.

Plaintiff has appealed.

During March 25, 1923, to April 6, 1924, defendant lived at 826 Carrollton avenue and was occupied as a tailor at No. —— Oak street; he was married and had four children; his wife died in May, 1924; she went to Hotel Dieu six months before she died; she was sick before she went there; defendant's mother-in-law, on Magnolia street, took the children at the time his wife went to the hospital; before that time an old lady, Sarah Neuhauser, took care of the children at his home; she is now in Julius Weiss Home; defendant never ordered milk from the plaintiff, and did not know that he furnished any at his house; he received a bill from plaintiff while his wife was unconscious; he did not know of it; there was a young couple living at his house who stayed over a year with him, while his wife was at home and while she was in the hospital; they did not board with him, they only occupied a room and ate out in the mornings; they went out early in the morning.

Being asked: "Do you also swear that this old lady that had charge of the house did not get the milk for your children?" the defendant answers: "Not that I know of."

He further testifies that he bought milk on Burthe street at the grocery only for coffee; that they used condensed milk; that he did not feed his children on cows' milk, and that he left his home at 7 A.M.

The plaintiff testified that he got an order over the telephone from Mr. Gordon on Oak street; that he did not deliver the milk to defendant personally but to an old lady at the house; that they stuck the bill each month under the bottles, except the last one, when he went around and presented the bill to the defendant himself, who said that he never got "all this milk, it was a lady in the house", the plaintiff never saw anyone else at the house.

Gus Washington is a chauffeur; he says he delivered the milk at 826 Carrollton avenue; he left the bills there monthly under the bottles; the old settled lady nursing the small children would be there every morning to receive the milk; "she would raise sand when they were late".

James Grainger testifies: He was delivering milk driving the truck for plaintiff in 1923 and 1924; he delivered milk to defendant's place, 826 Carrollton avenue; he gave it to an old lady, Mrs. Neuhauser,

but met Mrs. Gordon several times and also saw the defendant there; Mrs. Gordon told him she wanted the milk for the baby; he is not working for plaintiff now; he gave the milk to Mrs. Neuhauser by the back door, thought sometimes to Mrs. Gordon; she was a young woman between 23 and 30, kind of heavy, weighing about 145 to 165 pounds.

Mrs. Sarah Neuhauser is Mrs. Gordon's aunt; she has been an inmate of the Old Home for two years; she slept at defendant's house; she never got any milk while there; she got only one bottle while she lived there; they put it on the side step on the gallery; she did not see the man who delivered it; she never saw Washington or Granger before; she did not receive milk from the milk man. But she does not remember how long she lived at defendant's house, nor in what month she went to the house, nor when Mrs. Gordon went there, nor how long she was there, nor when she died, nor for whom the milk was; she has "forgotten" what sort of built lady Mrs. Gordon was; she does not know whether "anybody was living in that house besides Mr. Gordon"; she finally concludes by saying: "I don't remember anything."

The defendant was shown three checks, one dated March 6, 1923, for $9.22, another dated April 14, 1923, for $10.23, and a third dated May 11, 1923, for $10.26, all to the order of P. J. Bordes; he said he was the milk man and they represented payments on milk all during that period of time; these checks were written and signed by his wife; she did all the buying for the house; he cannot read English; his wife signed all business checks and made deposits in her name and in his; he left the management of the house to her; anything she bought in connection with the house he agreed to; she bought

everything, and he knew he had to pay for it; she did not ask him whether it was all right or not; when Shall came to see him, he told him he did not know anything about the bill, and if he owed him he would not have to come to court.

The plaintiff testified that he went to the Old Home to see Mrs. Neuhauser. She said to him that she put the milk upon the table and Mrs. Gordon got it; that he continued over a year without making a demand because there was nobody there but the old lady, Neuhauser, and she (Mrs. Gordon) being sick, he left the bill run; when he called at the residence he was told that Mrs. Gordon was sick and he could not see her.

We have thus labored through these forty-six pages of testimony with a purpose of arriving at the truth of this transaction. We have arrived at the conclusion that the trial judge erred in his judgment.

We remain convinced that the defendant's wife ordered the milk; that it was delivered at defendant's house; that it was received by Mrs. Neuhauser as his servant, and that it was consumed by defendant's wife and four children. The plaintiff testified that the milk was ordered by Mr. or Mrs. Gordon; but that is not important; he, and Washington, and Granger testify that they delivered the milk to Mrs. Neuhauser or to Mrs. Gordon; Mrs. Neuhauser had charge of defendant's four children. At the time of the trial Mrs. Gordon was dead and could not testify. Mr. Gordon testified that he did not order the milk. That may be true. But he testified that he, in common with many other husbands, left the management of the domestic affairs to his wife, and it is possible that he knew nothing of his wife's action in the matter. But the fact is that this milk was delivered to a serv-

ant in defendant's employ and used for his family. Mrs. Neuhauser denied it upon the stand but admits it in a private interview. The worst that can be said of her testimony is that it is not reliable.

Then the testimony of plaintiff, of Washington and Granger, must prevail. But it is said that the milk may have been for a couple who lived in defendant's house. Neither plaintiff nor his two witnesses, nor any other witness, ever saw either one of those lodgers. In order to avoid the damaging presumption caused by their absence from the witness stand, the defendant testified that he was not sure of their name, though they were his tenants for over a year, and that he had heard that they left for Canada in June, 1924.

The defendant swears that he bought no milk, or only a small quantity for coffee, that he did not feed his children on cow's milk, but on condensed milk. Yet he produces three checks dated March, 1923, for $9.22; April, 1923, for $10.23, and May 11, 1923, for $10.26, to the order of P. J. Bordes, a well-known milkman, "representing payments on milk". These checks are all written by his wife. They prove that his wife had the administration of domestic affairs and that his household used milk in the exact quantity claimed by plaintiff.

They also show that they quit Bordes after April, 1923, and engaged the plaintiff immediately after.

The reason of the change was probably because 'plaintiff's dairy' was "operated under the supervision of the N. O. Pure Milk Commission", and perhaps Bordes' was not.

Plaintiff claims for milk delivered after March 25, 1923, after the payments to Bordes.

Defendant has not proven that he purchased milk from any other than plaintiff after Bordes' bill.

The only suspicious circumstance about plaintiff's claim was his delay in demanding payment. His own testimony and the facts of this case explain that delay.

At the time plaintiff began serving milk at the defendant's home, his wife was already sick. Six months afterwards she was taken to the hospital. When plaintiff demanded payment at home he was told that defendant's wife was sick. This condition continued until a few days prior to her death when plaintiff called at defendant's establishment. She was then "unconscious", too ill to speak, or for plaintiff to press payment.

We therefore conclude that plaintiff's claim is established.

It is therefore ordered that the judgment appealed from be reversed and set aside. It is now ordered that the defendant, Robert Gordon, be condemned to pay to Hugh Milton Shall, the sum of one hundred and thirteen and 10-100 dollars, with five per cent per annum interest from June 19, 1925, till paid, and all costs of suit.